IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE. NEW MEXICO

JUL 2 4 2000

*Robert M March*

CLERK

UNITED STATES OF AMERICA,

Plaintiff,

v.

No. CIV 99-1280M

STATE OF NEW MEXICO, NEW
MEXICO ENVIRONMENT
DEPARTMENT, and PETER
MAGGIORE, in his official capacity
as Secretary of the New Mexico
Environment Department,

Defendants.

## MEMORANDUM OPINION
## AND ORDER

This controversy focuses on the United States Department of Energy's Waste Isolation

Pilot Plant (WIPP) near Carlsbad, New Mexico, the first deep geologic repository for the

permanent disposal of extremely dangerous radioactive waste, and on certain provisions of the

hazardous waste disposal permit issued for WIPP by the New Mexico Environment Department.

The United States relies on 28 U.S.C. sec.1331 and 1345 as jurisdictional authority and files suit

to challenge provisions of the Final Permit. The State of New Mexico contends that the Resource

Conservation and Recovery Act (RCRA). 42 U.S.C. sec. 6901 *et seq.*, precludes attacking the

state permit collaterally in a federal district court and that the case is better decided by a New

Mexico court.

The case comes up at this time on Defendants' Motion to Dismiss. Defendants argue

absence of subject matter jurisdiction, and in the alternative, move for dismissal on the ground

that "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar" require an abstention from the exercise of federal jurisdiction. I conclude, however, jurisdiction in a federal district court is fully authorized by both 28 U.S.C. sections 1331 and 1345, and abstention is not justified. The questions of federal law presented by the case are at least as imperative as the State's need to establish a coherent public policy and no reason to abstain from jurisdiction properly applies.

Undisputed Facts

The WIPP facility is owned by the United States Department of Energy (DOE) and operated jointly by DOE and the Westinghouse Waste Isolation Division, a private corporation. An underground geologic repository located in the southeast corner of the State of New Mexico, the facility consists of a four-square-mile area (sixteen sections) transferred to the United States Bureau of Land Management and removed from the public domain in perpetuity. This basic area is surrounded by management facilities and 35 acres which are set off as a protection area. It all rests twelve miles west and 500 feet above the Pecos River (and 400 feet above the 100-year flood plain), approximately eighteen miles east of Loving, New Mexico, the closest town.

WIPP was constructed for the purpose of storing and disposing of transuranic nuclear waste (TRU) and mixed hazardous wastes which contain TRU. It was designed after work in the 1950's by the National Academy of Sciences which studied various methods for disposing of radioactive waste, the feasibility of mined geological repositories and salt formations which could handle long-term waste isolation. A later study selected the eventual site, a 2000-foot thick salt formation known as the Salado Formation. The Salado Formation, which underlies approximately 36,000 square miles in New Mexico, Texas, Kansas and Oklahoma, was formed 220 to

2

250 million years ago when an ancient sea evaporated and left dissolved salts in massive layers. The Salado Formation was selected for the WIPP facility because it is regionally extensive (an indication of its stability) and also because it is isolated from other formations by impermeable beds above and below, is essentially dry, and is virtually impenetrable by water.

In June 1999, storage of TRU waste at WIPP was authorized by a Final Permit, issued by New Mexico's Environment Department (NMED) pursuant to the New Mexico Hazardous Waste Act, N.M.S.A. sec. 74-4-1 *et seq.*, and the RCRA. The RCRA allows states to establish a hazardous waste program in lieu of, but equivalent to, the federal program. 42 U.S.C. sec. 6926. Accordingly, the EPA has expressly granted New Mexico its authorization and approval; 50 Fed. Reg.1515 (Jan. 11, 1985.); and the Final Permit at issue has the same force and effect as a permit issued by the Administrator of the United States Environmental Protection Agency. 42 U.S.C. sec. 6926(d).

Nature of the Controversy

The United States sues for injunctive and declaratory relief to set aside provisions of the WIPP Final Permit and for a remand to the Secretary of the NMED with directions to reissue the permit without the contested provisions. The Final Permit is a multiple volume document which addresses operation of the WIPP site and governs storage, disposal and management of TRU and "mixed waste" (containing both hazardous constituents and radionuclides).

The United States contends that portions of New Mexico's Final Permit (a) are contrary to the Atomic Energy Act (AEA), 42 U.S.C. sec. 2011 *et seq.*; (b) disregard the Supremacy Clause of the United States Constitution, art.VI, cl.2; (c) exceed the United States' waiver of sovereign immunity contained in the RCRA because some permit provisions attempt to regulate

3

activities outside the federal statutory definition of solid waste; and (d) constitute arbitrary and capricious administrative actions not supported by substantial evidence, an abuse of discretion and decisions not in accordance with law.

The permit provisions with which the United States takes issue concern, first, very specific requirements for disposal of "non-mixed transuranic waste." According to the United States, these New Mexico requirements (i) regulate source, special nuclear and byproduct materials which are excluded from the definition of solid waste as defined in the RCRA at 42 U.S.C. sec. 6903(27), (ii) exceed federal environmental regulations, (iii) are not necessary to the proper disposal of non-mixed waste, and (iv) unreasonably restrict disposal of mixed waste.

Secondly, the United States contests the Final Permit's financial assurance requirements for WIPP closure and monitoring. These demand that Westinghouse obtain insurance for certain types of third party liabilities. The United States contends the insurance would cost Westinghouse an estimated twenty million dollars annually over the next five years and is unnecessary because federal law holds the United States responsible for closure and monitoring functions. The United States also argues that New Mexico's financial assurance requirements are proscribed by the Solid Waste Disposal Act, 42 U.S.C. sec. 6901 *et seq.*, and are inconsistent with federal environmental regulations, incorporated by reference into New Mexico law.

The United States also contests technical provisions of the Final Permit which it argues add millions of dollars in unnecessary cost, increase the risk of radiation exposure to Department of Energy personnel, exceed federal environmental regulations and violate the AEA and the RCRA. The provisions the United States opposes include a requirement that the contents of a substantial number of sealed waste containers be examined visually, as opposed to methods

which use radiography and limit visual examinations to quality assurance. According to the
United States, visual examination is accomplished by individual workers emptying the contents
of a waste container into a containment area and manipulating the contents so that every item can
be viewed. The United States contends this process not only adds cost and poses unnecessary
risks of radiation exposure to workers, but also increases the amount of radioactive waste
requiring disposal because it contaminates the additional materials used in the visual
examination.

The United States prefers to examine most of the sealed waste containers by radiography
(an x-ray technique) and to examine visually only a specified and limited number of waste
containers, as determined and varied by statistical calculations which purportedly measure the
accuracy of the radiography examinations. Inaccuracy in a radiography examination is termed a
"miscertification." The higher the miscertification rate, the greater the number of sealed
containers visually examined. The United States utilizes an initial miscertification rate of two
percent, which requires workers to visually examine 26 containers in a waste stream of 300. The
New Mexico requirement, however, sets an eleven percent initial miscertification rate which
requires examination of 202 containers in the stream of 300; and in addition, the New Mexico
requirement applies the rate to each generator site separately, which again increases the number
of containers that must be examined visually.

Anther provision challenged by the United States imposes specific requirements for the
sampling of homogeneous mixed and non-mixed wastes for volatile organic compounds. The
Final Permit requires the DOE to take and analyze three sub-samples from the core of
homogenous waste containers arriving at WIPP after the effective date of the Final Permit. The

5

DOE maintains, however, that some waste containers yet to be shipped have already been sampled in a manner consistent with methods approved by the United States Environmental Protection Agency (EPA), and these samplings provide an equivalent level of protection to the Final Permit's three sub-sample approach and make the additional sampling unnecessary. Additional sampling after arrival, according to the United States, would needlessly and arbitrarily require millions of dollars, create delay in shipments and increase the risk of radiation exposure to workers.

Finally, the United States objects to the Final Permit's provisions for groundwater monitoring which require DOE to monitor groundwater for gross alpha and beta radiation, even though, according to the United States, the area's naturally occurring radionuclides and large amounts of salt and other dissolved solids makes monitoring for gross alpha and beta radiation unreliable. The United States contends that the groundwater monitoring required by the permit is not necessary to ensure proper management of hazardous waste and duplicates DOE monitoring currently undertaken pursuant to the AEA and the Waste Isolation Pilot Plant Land Withdrawal Act (WIPP Act), 106 Stat. 4777 (1992). The United States also alleges violations of the AEA and the Supremacy Clause because the Final Permit's groundwater monitoring requirements regulate source, special nuclear and byproduct materials which are excluded from the RCRA definition of solid waste, and thus go beyond the waiver of sovereign immunity which allows the imposition of state requirements.

For all of these reasons, the United States wants the several challenged provisions of the Final Permit declared arbitrary and capricious, an abuse of discretion, not supported by substantial evidence in the record, and otherwise not in accordance with the law. Further, the

United States pleads for preliminary and permanent injunctions to preclude enforcement of the Final Permit and to remand the permit to the Secretary of NMED with instructions to reissue it without the challenged conditions.

Defendants' Position

New Mexico wants the issues decided in its Court of Appeals. It argues not only that the RCRA precludes jurisdiction in a federal district court, it contends (a) the issues present "difficult questions of state law bearing on policy problems of substantial public import," (b) federal adjudication would disrupt state efforts to establish a coherent public policy, and (c) "principles of wise judicial administration" advise against the exercise of federal jurisdiction, apparently because the same or related issues are presently pending in the New Mexico Court of Appeals.

Several lawsuits prior to this one have dealt with the WIPP project and TRU waste disposal in New Mexico, continuing controversies which have produced significant conflict and negotiation between the United States, principally DOE, and the State of New Mexico. In these cases New Mexico has also attempted to restrict the issues to state courts. See, e.g.: United States v. New Mexico, 32 F.3d 494 (10th Cir.1994). In this instance, the United States filed the additional state court action challenging the WIPP Final Permit (pursuant to Sec.74-4-14 NMSA 1978, for review of "any final administrative action of the board or the secretary" of NMED). In November 1999, however, the United States moved to stay this proceeding in the New Mexico Court of Appeals and submitted a request to the NMED Secretary to delay the effective date of the Final Permit. Exactly how the State court issues are framed is not clear and precisely what issues are subject to decision in the State case remains unspecified.

The Final Permit at issue is the result of a lengthy and formal administrative process

7

which included an extensive application, a draft permit, public comment, a revised draft and a

public hearing, eventually culminating in a 104-page report by a Hearing Officer setting out

specific recommendations on numerous factual and policy determinations. In issuing the Final

Permit, effective November 26, 1999, the NMED Secretary, according to Defendants, largely

adopted the findings and conclusions of the Hearing Officer.

In its Motion to Dismiss, the State of New Mexico insists that the present case constitutes

a collateral attack on the Final Permit and the administrative decision-making process. Citing

Chemical Weapons Working Group, Inc. v. U.S. Department of the Army, 111 F.3d 1485 (10th

Cir. 1997), New Mexico argues that collateral attacks on EPA and state equivalent permits are

expressly barred by the RCRA. In the alternative, the State contends that settled principles of

abstention require declining jurisdiction in order that New Mexico may develop its own safety

and health related policy.

Jurisdiction

Jurisdiction properly exists pursuant to 28 U.S. C. sec.1345, as pled in the First Amended

Complaint. This grant of jurisdiction in Section1345 is without regard to the subject matter of the

litigation. United States v. New Mexico, supra. In addition, the Tenth Circuit has held that Sec-

tion1345 does not subject the United States as party plaintiff to the "well-pleaded complaint

rule." Federal Home Loan Bank Board v. Empie, 778 F.2d 1447, 1450 (10th Cir.1985). Because

Section1345 provides original jurisdiction over all issues raised by the United States' First

Amended Complaint, the State's reliance on Chemical Weapons Working Group, Inc. v.

Department of the Army is misplaced. The Chemical Weapons case speaks only to "citizen suits"

and "persons." Id. at 1490. The basis of jurisdiction expressly invoked, in fact, is "the citizen

8

suit" provision of the RCRA. 42 U.S.C. sec. 6972. This provision does not apply when the United States is plaintiff. Id.; 28 U.S.C. sec.1345.

In addition, I find the First Amended Complaint raises claims which clearly arise under and require determination of federal law. Central to the questions presented are (a) the scope of the RCRA's waiver of sovereign immunity to allow state regulation at a federal facility, (b) DOE's rights and the force of federal law in the face of delegations of authority to the State of New Mexico, and (c) the extent of the State's power to impose its own standards regarding storage and management of TRU and mixed waste, as well as related waste the RCRA calls "source, special nuclear and byproduct material." These federal questions establish jurisdiction properly based in 28 U.S.C. sec.1331.

"The doctrine of abstention, under which a District Court may decline to exercise or post-pone the exercise of jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River Water Conserv-ancy District v. United States, 424 U.S. 800, 813 (1976), quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189 (1950); City of Moore v. Atchison, Topeka & Santa Fe Railway Co., 699 F.2d 507, 510 (10th Cir.1983). Never has it been held that a federal court should exercise its discretion to dismiss a case merely because a State court could entertain it. Colorado River Water Conservancy District v. United States, supra at 813-814. The "rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. . . .'" Id. at 817, quoting McClellan v. Carland, 217 U.S. 268, 282 (1910). Even where state issues of grave importance may be involved, "the mere potential for conflict in the results of adjudications, does not without more, warrant staying

9

exercise of federal jurisdiction." Colorado River Water Conservancy District, supra at 816.

In this context, I find none of the State's arguments for abstention persuasive or controlling. Apart from the State's unquestionably valid interest and the extent of its efforts to this point, which demonstrate a well-developed and aggressive approach, federal questions regarding regulation and storage of TRU and mixed waste and source, special nuclear and byproduct material, all generated by the United States, deposited in a federal facility and subject to federal law, control over the State's desire to formulate an independent policy.

The "area subject to state regulation" referred to as reason for abstention can be only that delegated by the RCRA, approved by the EPA, and found to be equivalent to RCRA policies and provisions. 42 U.S.C. sec. 6926. Thus, despite the fact that WIPP poses gravely important environmental policy issues to the State of New Mexico which the State is fully capable of determining, the extent of the federal government's intrusion to this point upon New Mexico's ability to control storage and management of TRU and mixed waste already acts as a severe constraint on the scope of state decisions. Any "uniformity" New Mexico may achieve in its environmental policy and attempts to regulate hazardous waste within the State is strictly limited to that which is consistent with the federal scheme. This markedly changes the nature of "state" issues. The "area subject to state regulation" can neither be the subject of true "domestic policy" of the State of New Mexico nor precipitate the necessity of what is referred to as Burford abstention. See: Burford v. Sun Oil Co., 319 U.S. 315 (1943). Burford abstention is not appropriate where the issues presented require application of federal law. ANR Pipeline Co. v. Corporation Commission of Oklahoma, 860 F.2d 1571, 1579 (10th Cir. 1988).

10

Therefore, with federal statutory authority granting original jurisdiction clear and proper and not having any substantial reason to abstain from the exercise of jurisdiction, I find and conclude that the Defendants' Motion to Dismiss is without merit.

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion to Dismiss is denied.

_____
SENIOR UNITED STATES JUDGE

11